SC

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

| | | |
|---|---|---|
| Ty Hertig, | ) | No. CV 1:04-CV-5633-ROS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Steven Cambra, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

9
10
11
12
13

14    This case was reassigned to the undersigned judge on November 25, 2008.  (Doc.#

15   18.)[1]  Plaintiff Ty Hertig, who is confined in the California State Prison in Corcoran,

16   California, filed a *pro se* Second Amended Complaint pursuant to 42 U.S.C. § 1983.[2]  (Doc.#

17   17.)  The Court will order Defendants Friedman and Viravathana to answer Plaintiff's claims

18   of deliberate indifference to his serious medical needs contained in his Second Amended

19   Complaint and will dismiss the remaining claims and Defendants without prejudice.

20   **I.    Statutory Screening of Prisoner Complaints**

21    The Court is required to screen complaints brought by prisoners seeking relief against

22   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

23   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

24   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

25

26   [1]  "Doc.#" refers to the docket number of filings in this case.

27   [2]  The Second Amended Complaint supersedes the original and the first amended

complaints in their entirety.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

28

JDDL

1  be granted, or that seek monetary relief from a defendant who is immune from such relief.

2  28 U.S.C. § 1915A(b)(1), (2).

3  **II.    Second Amended Complaint**

4          Plaintiff alleges that various Defendants acted with deliberate indifference to his

5  serious medical needs in violation of his Eighth Amendment rights.  He sues the following

6  Defendants, who are all employed by the California Department of Corrections (CDC):

7  Director Steven Cambra; Corcoran Warden Galaza; Chief Medical Officer M.L. Bendon;

8  Neurologist Dr. Viravathana; Pain Specialist Dr. Friedman; Nurse D. Edmonds; Corrections

9  Officer (CO) Fujioka; and Does I-III.  Plaintiff seeks declaratory, injunctive, compensatory,

10 and punitive damages.

11         Plaintiff alleges the following facts: On July 17, 2002, Drs. Johns and Kanan, who

12 worked at Pelican Bay State Prison, classified Plaintiff as "permanently mobility impaired"

13 in his lower extremities.  (Doc.# 17 at 6.)  On July 24, 2002, a "special committee" referred

14 Plaintiff's case to the "Classification Staff Representative" (CSR) with a recommendation

15 that Plaintiff be transferred to Corcoran State Prison (Corcoran) by "Special Medical

16 Transportation" due to his "immediate medical needs."  (Id. at 7.)  The CSR approved the

17 recommendation on July 30, 2002.  (Id.)  On August 7, 2002, Plaintiff received an epidural

18 injection, presumably for pain.[3]  (Id.)  On August 14, 2002, Plaintiff and his medical records

19 were transferred to Corcoran.  (Id. at 7.)  On arrival at Corcoran, Plaintiff's medical records

20 were given to an unknown corrections officer and apparently subsequently lost.  (Id.)

21 Plaintiff was placed in a standard Special Handling Unit (SHU) cell, rather than a cell

22 equipped for a disabled inmate, and his TLSO[4] back brace and walker were taken from him

23 by unknown officers; Plaintiff consequently could only navigate within the cell by crawling

24 in severe pain and subject to further deterioration to his spine.  (Id.)  Within hours, Plaintiff

25

26         [3]  Plaintiff contends that "Defendants" failed to have a specialty consult within 30
27 days  and "no action" was taken.  (Id. at 6.)

28         [4]  TLSO appears to refer to a thoracic lumbosacral orthosis, presumably used to
   stabilize his spine.

1    was treated in an emergency room for pain but was nevertheless returned to the same cell

2    without his brace or walker.  (Id. at 7-8.)

3        On August 20, 2002, a medication nurse had Plaintiff transferred to the facility

4    treatment unit based on his medical condition.  (Id. at 8.)  Dr. Virathana, a neurologist,

5    admitted Plaintiff into the "Acute Care Hospital" (ACH), where Plaintiff remained for

6    approximately a week before being returned to a non-disability SHU cell, again without his

7    brace or walker.  (Id.)  Dr. Virathana informed Plaintiff that he did not have his medical

8    records.  (Id.)  Plaintiff repeatedly sought examination and treatment by a neurosurgeon, and

9    the return of his assistive devices, without success.  (Id.)  On October 26, 2002, Plaintiff was

10   admitted to the ACH due to damage to his left knee allegedly caused by having to crawl in

11   his cell.  (Id. at 10.)  On March 20, 2003, Plaintiff received surgery for the condition and on

12   April 2, 2003, the orthopedic surgeon concluded that Plaintiff's right knee also required

13   surgery.  (Id. at 10-11.)

14       On September 17, 2002, Nurse Edmonds wrote a form 128-B "chrono" stating

15   Plaintiff was malingering, despite contrary medical records documenting Plaintiff's medical

16   condition.  (Id. at 8-9.)  Plaintiff asserts that Edmonds's chrono in turn affected the way

17   "Defendants" responded to his medical needs, but Plaintiff does not allege specifically how

18   or by whom his treatment was so affected.  (Id.)  Plaintiff appealed the chrono entry and, on

19   appeal, Senior Nurse Wooten ordered Edmonds to remove the malingering statement from

20   the chrono, but Edmonds failed to do so.  (Id. at 9.)

21       On November 18, 2002, CO Fujioka, a facility property officer, caused Plaintiff's

22   medically-authorized shoes and ace wraps to be taken from him before replacement shoes

23   had been issued.  (Id. at 5, 11.)  Subsequently on August 5, 2003, September 30, 2003, and

24   May 10, 2004, a podiatrist examined Plaintiff and recommended that his shoes be returned

25   to him, but they were not.  (Id.)

26       On December 6, 2002, Dr. Friedman refused to treat Plaintiff's right shoulder for an

27   unidentified condition because Plaintiff was in "to[o] much pain."  (Id. at 12.)  On December

28

1   19, 2002, Drs. Viravathana and Friedman prescribed amitriptyline[5], which caused Plaintiff

2   to lose consciousness during an interview with Ms. Doan, an Americans with

3   Disabilities/Disabilities Placement Program co-ordinator. (Id. at 12.) Plaintiff subsequently

4   refused to continue taking the medication. (Id.) In January 2003, Plaintiff was informed by

5   an unidentified doctor during another interview with Ms. Doan that amitriptyline should only

6   be administered by mental health professionals after a complete examination. (Id.)

7       On August 3, 2003, Dr. Friedman again refused to treat Plaintiff's right shoulder,

8   instead referring him for a psychiatric evaluation for the sixth or seventh time. (Id. at 13.)

9   On August 13, 2003, an unidentified physician concluded that Plaintiff was not malingering

10  and, following a physical examination, that Plaintiff should be treated by all means possible.

11  (Id. at 9.)  On September 9, 2003, Plaintiff was examined by a neurosurgeon, who

12  recommended an unidentified course of treatment. (Id. at 12.)  On October 8, 2003, Dr.

13  Friedman refused to act on the recommended course of treatment. (Id.)

14      Plaintiff contends that Dr. Friedman, a pain specialist, refused to provide him "any

15  meaningful course of treatment" until February 24, 2005, when court-ordered monitors began

16  to take over responsibility for medical care and that only then did Dr. Friedman begin to

17  provide treatment recommended by a specialist.[6] (Id. at 9-10.) According to Plaintiff, prior

18  to that time, Dr. Friedman had either referred Plaintiff to the mental health department or had

19  refused to provide treatment. (Id. at 10.) Plaintiff similarly contends that Dr. Viravathana

20  failed to treat him between August 14, 2002 until February 24, 2005 and to restore access to

21  his brace and shoes. (Id.)

22  **III.   Failure to State a Claim**

23      To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the

24

25  _____

26      [5] According to Stedman's Medical Dictionary, amitriptyline hydrochloride is an
    antidepressant agent that is sometimes used in the treatment of sleep disorders or neurogenic
27  pain syndromes.  Stedman's Medical Dictionary 17640 (27th ed. 2000).

28      [6] Plaintiff also alleges that he was transferred to appropriate housing and began to
    receive specialty consultations by October 8, 2004. (Id. at 11.)

conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. <u>Wood v. Ostrander</u>, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72, 377 (1976).

### A.    Doe Defendants

Plaintiff sues three fictitiously-named Defendants, Does I-III. Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint or amended complaint upon an anonymous or unnamed defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff may use the discovery processes to obtain the names of the persons whom he believes violated his constitutional rights. If Plaintiff discovers the identities of these fictitious defendants through the discovery process, or otherwise, he may seek leave of the Court to amend to name these individuals.

### B.    Cambra, Galaza, and Bendon

Plaintiff also sues Director Cambra, Warden Galaza, and Chief Medical Officer Bendon. Although each may be properly sued for constitutional violations, Plaintiff fails to state a claim against any of them. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy,

1  practice, or custom.  See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir.

2  2001).  Further, there is no *respondeat superior* liability under § 1983, so a defendant's

3  position as the supervisor of a someone who allegedly violated a plaintiff's constitutional

4  rights does not make him liable.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);

5  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in his individual capacity,

6  "is only liable for constitutional violations of his subordinates if the supervisor participated

7  in or directed the violations, or knew of the violations and failed to act to prevent them."

8  Taylor, 880 F.2d at 1045.

9  Plaintiff fails to allege facts to support that Cambra, Galaza, or Bendon enacted or

10  enforced a policy, custom, or practice that resulted in the denial of Plaintiff's constitutional

11  rights.  Further, Plaintiff has not alleged that Cambra, Galaza, or Bendon directly violated

12  his constitutional rights or that any of them were aware that Plaintiff's rights were being

13  violated but failed to act.  Thus, Plaintiff fails to state a claim against Cambra, Galaza, or

14  Bendon in his Second Amended Complaint and they will be dismissed without prejudice.

15  **C.    CO Fujioka and Nurse Edmonds**

16  Plaintiff also sues CO Fujioka and Nurse Edmonds.  The only facts alleged against

17  Fujioka is that he took Plaintiff's medically-authorized shoes before replacement shoes were

18  provided.  The only facts alleged against Edmonds is that she included a statement that

19  Plaintiff was malingering in a chrono and failed to comply with a superior's instruction to

20  delete the statement.

21  To state a claim for denial of constitutionally adequate medical care, a plaintiff must

22  allege facts to support that he has or had a serious medical need and that a particular

23  defendant acted with deliberate indifference to that need.  See Estelle v. Gamble, 429 U.S.

24  97, 104-05 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003).  To

25  allege a serious medical need, a plaintiff must set forth facts to support that the "failure to

26  treat a prisoner's condition could result in further significant injury or the 'unnecessary and

27  wanton infliction of pain.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting

28  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by

JDDL                                        - 6 -

1   <u>WMX Techs, Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).  He must also allege

2   facts to support that a defendant acted with deliberate indifference to the serious medical

3   need.  Deliberate indifference may occur if "prison officials deny, delay or intentionally

4   interfere with medical treatment."  <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th

5   Cir.1988).  Mere negligence, however, "in diagnosing or treating a medical condition,

6   without more, does not violate a prisoner's Eighth Amendment rights."  <u>Lopez</u>, 203 F.3d at

7   1132 (quoting <u>Hutchinson</u>, 838 F.2d at 394).  Further, a delay in receiving medical care,

8   without more, is insufficient to state a claim against a jailor for deliberate indifference unless

9   the plaintiff can show that the delay in treatment harmed him.  <u>Shapley v. Nevada Bd. of</u>

10  <u>State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).

11          **Fujioka**

12          Plaintiff has not alleged facts to support that the deprivation of his "medically

13  authorized" shoes rises to the level of deliberate indifference to a serious medical need.  First,

14  Plaintiff fails to allege facts to support that the shoes were authorized for a serious medical

15  need or the nature of such need.  Plaintiff also fails to allege facts to support that Fujioka

16  intentionally interfered with prescribed medical care by taking the shoes, i.e., that he acted

17  with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff also fails to allege

18  an actual injury resulting from the taking of his shoes.  For these reasons, Plaintiff fails to

19  state a claim against Fujioka and he will be dismissed without prejudice.

20          **Edmonds**

21          As noted above, Plaintiff alleges that Edmonds stated in a chrono that Plaintiff was

22  malingering, despite contrary medical documentation, and failed to remove the statement

23  from the chrono.  Plaintiff alleges that the presence of the chrono affected how other

24  Defendants responded to his medical needs.  Plaintiff has not, however, alleged facts to

25  support that Edmonds either made the chrono entry, or failed to remove it, to delay or

26  intentionally interfere with any prescribed medical treatment for a serious medical need.

27  Accordingly, Plaintiff's claim against Edmonds will be dismissed for failure to state a claim.

28  /      /      /

**IV.    Claims for Which an Answer Will be Required**

Plaintiff alleges that Drs. Viravathana and Friedman intentionally delayed and denied providing him appropriate treatment for his serious medical needs.  Plaintiff alleges that he had been determined to be "permanently mobility impaired" and transferred to Corcoran with his medical records and assistive devices due to his "immediate medical needs."  (Doc.# 17 at 6.)  He further alleges that Drs. Viravathana and Friedman failed to provide adequate medical care, including access to assistive devices, and that Dr. Friedman repeatedly delayed providing appropriate medical care recommended by specialists by repeatedly referring him for psychiatric evaluations.  Plaintiff sufficiently states a claim for deliberate indifference to his serious medical needs against these Defendants.  Accordingly, they will be required to respond to the Second Amended Complaint.

**V.    Warnings**

**A.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**B.    Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Defendants Cambra, Galaza, Bendon, Edmonds, Fujioka, and Does I-III are

1  **dismissed** without prejudice.

2      (2)    Defendants Viravathana and Friedman must answer Plaintiff's claims for
3  deliberate indifference to his serious medical needs contained in the Second Amended
4  Complaint.  (Doc.# 17.)

5      (3)    The Clerk of Court must send Plaintiff a service packet including the Second
6  Amended Complaint (doc.# 17), this Order, a Notice of Submission of Documents form, an
7  instruction sheet, and copies of summons and USM-285 forms for Defendants Viravathana
8  and Friedman.

9      (4)    Within **30 days** of the date of filing of this Order, Plaintiff must complete and
10  return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit
11  with the Notice of Submission of Documents: a copy of the Second Amended Complaint for
12  each Defendant, a copy of this Order for each Defendant, a completed summons for each
13  Defendant, and a completed USM-285 for each Defendant.

14      (5)    Plaintiff must not attempt service on Defendants and must not request waiver
15  of service.  Once the Clerk of Court has received the Notice of Submission of Documents and
16  the required documents, the Court will direct the United States Marshal to seek waiver of
17  service from each Defendant or to serve each Defendant.

18      (6)    **If Plaintiff fails to return the Notice of Submission of Documents and the
19  required documents within 30 days of the date of filing of this Order, the Clerk of Court
20  must, without further notice, enter a judgment of dismissal of this action without
21  prejudice.**  See **Fed. R. Civ. P. 41(b).**

22      DATED this 8th day of January, 2009.

25  _____
Roslyn O. Silver
United States District Judge